HARRISON *v.* TAYLOR *et al.*[*]

(Division A.   March 25, 1929.   Suggestion of Error Overruled April 15, 1929.)

[121 So. 131.   No. 27638.]

*Buntin & McIntosh* and *G. G. Lyell,* for appellant.

*Mize & Mize & Thompson* and *J. A. Sykes,* for appellees.

Argued orally by *G. Garland Lyell,* for appellant, and *R. W. Thompson,* for appellees.

Cook, J. The appellant, Mrs. Anna T. Harrison, filed two bills of complaint in the chancery court of Harrison county, one against J. L. Taylor, trustee, Benjamin Harrison, and Mrs. Lee Russell, and the other against R. W. Thompson, trustee, and the said Benjamin Harrison and Mrs. Lee Russell. These suits were of a similar nature and the relief sought in each of them was the same and by agreement of counsel they were consolidated and tried

as one case, and at the final hearing a decree was entered dismissing the bills of complaint, and from this decree this appeal was prosecuted.

The bills of complaint alleged certain matters in reference to the validity of appellant's marriage to the defendant Benjamin Harrison, and to the domestic relations existing between them, and alleged that on March 1, 1926, prior to her marriage to Benjamin Harrison, appellant purchased a certain particularly described tract of land and received a deed conveying it to her; that later, and while she was still the owner thereof, this tract of land was surveyed and platted into a subdivision known as ''Hiawatha on the Bay,'' and the plat of said subdivision was filed and recorded in the office of the chancery clerk of Harrison county, which plat or map purported to have been signed and acknowledged by the appellant, when in truth and in fact she neither signed nor acknowledged the said plat.

The bills of complaint further charged that on January 27, 1927, the appellee Benjamin Harrison, her husband, or some other person unknown to appellant, forged her name to an instrument of writing in the form of a deed of conveyance which purported to convey to the said Benjamin Harrison the lands belonging to appellant which were described and embraced in the said plat or survey known as ''Hiawatha on the Bay;'' that the said deed recites that appellant signed and delivered it before J. R. Derecourt, a justice of the peace in and for district No. 4 of Harrison county, Mississippi; that the said deed which purported to be signed and acknowledged by the appellant was a forgery, and her name was signed thereto without her knowledge or consent by the said Benjamin Harrison or some other person unknown to her; that she neither signed nor acknowledged the said deed before the said justice of the peace; and said instrument was therefore wholly void and vested no right, title, or interest in and to said land in the said Benjamin Harri-

son, and should be adjudged to be fraudulent and forged, and should be canceled as a cloud on her title to said land.

The bill of complaint in one of the cases charged that on June 11, 1927, the said Benjamin Harrison executed a deed of trust on the said land of the appellant in which J. L. Taylor was named as trustee and Mrs. Lee M. Russell as beneficiary, which said instrument purported to secure an indebtedness of four thousand one hundred forty-six dollars and ten cents to Mrs. Lee M. Russell, while in the other case it was charged that on April 14. 1927, the said Benjamin Harrison executed a deed of trust on the said land in favor of D. B. Allen, as trustee, and the Bank of Pass Christian, Mississippi, as beneficiary, to secure a purported indebtedness of the said Harrison in the sum of three thousand seven hundred fifty dollars, which said deed of trust was afterwards assigned to Mrs. Lee M. Russell, who substituted the appellee R. W. Thompson, Jr., as trustee therein. The bills of complaint then charged that the respective trustees in these deeds of trust were advertising the land described therein for sale; and that each of the said deeds of trust were null and void, and should be canceled by the court. The bills of complaint prayed that the appellant's purported signature to the said deed conveying the land to Benjamin Harrison be adjudged to be a forgery, and that the said deed and deeds of trust executed by him be decreed to be null and void, and that the same be canceled as a cloud on her title.

There was evidence consisting of oral testimony, and many exhibits bearing the purported true signature of the appellant offered upon the question of whether or not the appellant's signature on the plat known as "Hiawatha on the Bay" and on the deed from appellant to Benjamin Harrison were forged; and some of the assignments of error are based upon the admission or ex-

clusion of testimony bearing upon this issue, but under our view of the other questions raised on this appeal, this testimony becomes immaterial, and the assignments of error based thereon cannot avail the appellant.

As to the signing and acknowledging of the deed purporting to convey the land in controversy to Benjamin Harrison, the said Harrison testified that his wife signed the deed, and that he went with her to the office of John R. Derecourt, a justice of the peace, and that she then acknowledged before this officer that she signed and delivered it. John R. Derecourt, the justice of the peace, testified that Harrison first came to his office to see about having his wife's signature to a deed acknowledged; that he thereupon went with Harrison to his home, but Mrs. Harrison was not there; that on the following day Harrison came to his office with a woman whom he introduced as his wife, and requested him to take his wife's acknowledgment of her signature to a deed, which he handed him; that this woman then acknowledged that she signed and delivered it, and he thereupon signed the jurat and affixed his seal thereto. He identified the deed in question as being the deed which was acknowledged before him at that time, and testified that he had not been acquainted with Mrs. Harrison prior to that time, but the woman who appeared at his office and acknowledged the deed bore a strong resemblance to Mrs. Harrison, who was then in court.

The record discloses that Mr. F. H. Ritter and Mrs. Lee M. Russell owned tracts of land which were combined with the land of the Harrisons in the survey and plat of the subdivision known as "Hiawatha on the Bay," and therefore it became necessary for each of the parties who owned land covered by this plat to sign and acknowledge the plat. As to the appellant's signature on the plat, Mr. and Mrs. Lee M. Russell testified that they were to meet Mr. Harrison and his wife at the chancery clerk's office for the purpose of signing the

plat, in order that it might be completed and recorded; that when they went to the clerk's office for that purpose, they found that appellant had not been there to sign the plat, and that they then left and walked to the postoffice; that upon returning to the courthouse, they met Harrison and the appellant leaving the building, and upon inquiring of them whether they had signed the plat, both stated that they had; and that they (Mr. and Mrs. Russell) then went to the chancery clerk's office and examined the plat, and saw what purported to be the appellant's signature thereon, and that Mrs. Russell thereupon signed and acknowledged the plat.

The chancery clerk testified that at the time the plat was signed before him, he was well acquainted with Benjamin Harrison, but did not know his wife; that Mr. Harrison and a woman, whom he introduced as his wife and who represented herself to be Mrs. Harrison, came to his office for the purpose of acknowledging the plat known as "Hiawatha on the Bay;" that he did not remember whether the signature, Anna T. Harrison, had already been placed on the map, or whether it was so signed in his presence, but he clearly remembered that the woman who represented herself as being Mrs. Harrison acknowledged the signature as her own; and that within a very few minutes of the time when the purported Mrs. Harrison acknowledged the signature on the plat, Mr. and Mrs. Lee M. Russell came into his office, and Mrs. Russell signed and acknowledged it.

There was also testimony to show that Mrs. Harrison saw the surveyors at work while they were surveying or platting this land at the instance of Benjamin Harrison, and was familiar with the plans in so doing, and that she saw various advertisements of lots in this subdivision which were signed by Benjamin Harrison, as sole owner, and that she made no protest.

The appellant assigns as error the action of the court in admitting in evidence the plat of "Hiawatha on the

Bay,'' which contained the disputed signature of the appellant, for the reason that this disputed signature was not competent evidence to prove the disputed signature of the appellant on the deed in controversy. Conceding that the appellant is correct in this view, still we think this plat and the evidence in reference to its preparation and the signature and acknowledgment thereof were competent as bearing upon the question of whether or not the appellant ratified the acts of her husband in dealing with this land, and is now estopped to deny her signature on the deed in so far as the intervening rights of the lienholders are involved.

The testimony bearing upon the question of whether or not appellant's signatures on the plat and the deed conveying the land to her husband were forged, or were placed thereon by her husband without her authority, is conflicting; but the appellant contends that error was committed in the admission of certain testimony and the exclusion of other testimony bearing upon this question. We are of the opinion, however, that without reference to the question of whether or not the appellant's name was signed to these instruments by her husband, there was ample testimony to support a finding by the court that she had personally appeared before the officers, acknowledged her signature, and delivered both the plat and the deed, thereby ratifying his act in signing her name thereto if, in fact, he did so sign her name; and that by her conduct she had ratified his acts in reference to this property, and therefore is now estopped to deny her signatures to these instruments. The decree of the court below dismissing the bills of complaint will therefore be affirmed.

*Affirmed.*